FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 18, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DALE S.,<br><br>                         Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                         Defendant. | NO:  1:19-CV-3098-RMP<br><br>ORDER DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT, without oral argument, are cross-motions for summary judgment from Plaintiff Dale S.[1], ECF No. 10, and the Commissioner of Social Security ("Commissioner"), ECF No. 11.  Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's denial of his claims for supplemental security income under Title XVI of the Social Security Act (the "Act").  *See* ECF No. 10 at 2.  Having reviewed the parties' motions and the

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

administrative record, the Court is fully informed.  The Court denies Plaintiff's

motion and grants the Commissioner's motion.

## BACKGROUND

### A. Plaintiff's Claim for Benefits and Procedural History

Plaintiff Dale S. was 42 years old on his application date.  Administrative

Record ("AR") 183.[2]  Dale claims that chronic back pain and mental health issues

prevent him from working.  *See* AR 43−45.

### B. October 26, 2017 Hearing

Administrative Law Judge ("ALJ") Ilene Sloan heard Plaintiff's claim for

benefits at a hearing in Yakima, Washington, on October 26, 2017, with Dale and

his attorney Lauren Shaw in attendance.  AR 41.  Dale testified in response to

questions from Ms. Shaw.  Vocational expert Kimberly Molineux also testified

regarding Dale's claims.

Plaintiff testified that he completed tenth grade before he was incarcerated

from 1993 until 2007, during which time he earned his GED.  AR 43.  Dale worked

intermittently between his release in 2007 and approximately 2015.  AR 45.  One of

his jobs was stocking at a warehouse.  AR 45.  He also has a background in

construction.  AR 49.

---

[2] The AR is filed at ECF No. 8.

ORDER DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 2

1    At the time of the hearing, Plaintiff lived with his girlfriend.  AR 47.  He

2  moved from Seattle, Washington, to join her in Granger, Washington.  *Id.*  Plaintiff

3  testified that his girlfriend does not work because of a medical disability, so they

4  mostly stay at home watching television, or go out to walk, visit friends, shop, or

5  attend church or appointments.  AR 47, 52.  They determine who handles a

6  household task based on "[w]hoever feels like it or whoever is not hurting as much

7  at the moment."  AR 47.  Dale and his girlfriend both shop for groceries, cook, and

8  clean their apartment.  AR 48–49.  They both go to the laundromat and fold their

9  clothes, but his girlfriend does the rest of the laundry tasks.  AR 48.  Dale's

10  girlfriend drives them wherever they need to go because Dale does not have a

11  driver's license.  AR 48.  Dale goes grocery shopping on his own, but reports that he

12  is unable to shop at a store larger than a small "corner store" because of social

13  anxiety.  AR 57–58.

14    Dale reported a minimal ability to participate in hobbies.  AR 53.  He likes to

15  read magazines about lowrider cars.  AR 51, 53.  He used to enjoy hunting but had

16  not been hunting for approximately four or five years before the hearing.  AR 53.

17    Dale described difficulty being around groups of approximately eight or more

18  people.  AR 53.  He avoids groups and favors more limited interactions at family

19  gatherings and has had to leave church when he begins to feel uncomfortable.  AR

20  54.

21

ORDER DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 3

1    Dale has taken medications to treat psychiatric symptoms since he was

2    incarcerated.  AR 54.  Dale testified that he was in solitary confinement for

3    approximately two years, and prison officials released him back to the general

4    population only after he was "seen by a psychologist and put on psych medications."

5    AR 54.  Since being released from prison, Dale's struggle to manage his emotions,

6    particularly his anger, has continued.  AR 55.  At some point before the hearing date,

7    Dale had completed treatment at a mental health facility.  AR 55−56; *see* AR 374

8    ("Certificate of Completion from Therapy Services" dated Feb. 8, 2017).  However,

9    after being discharged, he no longer had access to a counselor and perceived that his

10   symptoms had worsened "little-by-little."  AR 56.  He struggles to deal with anger

11   and social discomfort when on public outings, alone or with his girlfriend.  AR 57.

12   He feels jumpy and anxious at night and testified that he sleeps only two or three

13   hours each night.  AR 56−57.

14   Plaintiff also described experiencing pain due to lower back arthritis.  AR 58.

15   He testified that when he is in severe pain, he has visited the emergency room rather

16   than his primary care doctor.  AR 58.  The emergency medical staff advises hm to

17   see his primary care doctor.  AR 58.  His primary care doctor as well as a pain

18   specialist in Yakima have prescribed MRIs.  However, Plaintiff's insurance denied

19   an MRI "at least four times now."  AR 58.  Without an MRI, Plaintiff testified, his

20   primary care doctor has advised only that he take ibuprofen to address the

21   inflammation in his lower back.  AR 59.

ORDER DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 4

1    Dale described needing to lie down "sometimes" during the day for a half

2    hour up to an hour to address discomfort and a "tingliness" going up his spine.  AR

3    59.  Dale described being in a lot of pain the day after physical therapy, in the past,

4    or a long walk with his girlfriend.  AR 60.  As a result, Dale anticipates that he

5    would be fired from any full-time job because he would "probably have to take

6    breaks all the time."  AR 60.

7    The ALJ heard testimony from vocational expert ("VE") Kimberly Molineux

8    in response to questions from the ALJ regarding hypothetical scenarios.  AR 60−65.

9    The ALJ asked VE Molineux to consider a hypothetical individual of Dale's age and

10    education, with past work as a diesel mechanic, industrial truck operator, and

11    construction work II, who: has no exertional limits; can understand and remember

12    simple, routine tasks; is able to have occasional and superficial contact with

13    coworkers and no contact with the general public; and only occasional and

14    predictable changes in the work place setting.  AR 61−62.  The VE responded that

15    an individual as the ALJ described could not perform past work due to the

16    occasional superficial contact with coworkers.  AR 62.  However, the VE asserted

17    that the hypothetical individual could perform other work as an industrial cleaner, a

18    kitchen helper, or a laundry worker II.  AR 62.

19    The ALJ posed a second hypothetical involving an individual of the same age

20    and education as Dale with the past relevant work as established who: is able to

21    work at a light exertional level; can frequently climb ramps and stairs; occasionally

climb ladders, ropes, and scaffolds; is able to balance, frequently stoop, kneel, and crouch, and occasionally crawl; must avoid concentrated exposure to extreme cold, vibration and hazards such as moving machinery and unprotected heights; and would be able to understand, remember and carry out simple routine tasks; is able to manage occasional and superficial contact with coworkers; cannot manage contact with the general public; and is able to adapt to occasional and predictable changes in the work place. AR 62−63. The VE testified that an individual with those characteristics could work as a cleaner/housekeeper, an assembler, or a packing line worker. AR 63. The VE expanded, in response to the ALJ's further questioning, that if a person as described in the second hypothetical were to get into a verbal altercation with a coworker or supervisor, an employer may terminate the person on the first or up to the fifth occurrence, with the likelihood of termination increasing to very likely by the fifth occurrence of the problematic behavior. AR 65. The VE also testified that an employer in the unskilled labor market typically would not tolerate an employee taking an additional 15-minute break from the work environment to regain his composure. AR 65. The VE further opined that employers in a competitive workplace will tolerate approximately six unscheduled absences in a year. AR 63−64.

### C. ALJ's Decision

On May 15, 2018, the ALJ issued an unfavorable decision. AR 15−25. Applying the five-step evaluation process, Judge Sloan found:

ORDER DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6

1     **Step one:** Dale has not engaged in substantial gainful activity since January 8,

2     2016.

3     **Step two:** Dale has the following severe impairments that are medically

4     determinable and significantly limit Dale's ability to perform basic work

5     activities: depressive disorder and unspecified personality disorder.  The ALJ

6     found that Dale's other diagnoses of mild degenerative disc disease,

7     hypertension, dyslipidemia, seasonal allergies, allergic rhinitis, and history of

8     knee surgeries "cause no more than minimal impact on basic work activities."

9     AR 17.

10    **Step three:** The ALJ concluded that Dale's mental impairments, considered

11    singly or in combination, do not meet or medically equal the severity of one of

12    the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R.

13    § 416.920(d), 416.925 and 416.926).

14    **Residual Functional Capacity ("RFC"):**  The ALJ found that Dale has the

15    RFC to:

16              perform a full range of work at all exertional levels but with the
              following nonexertional limitations: he can understand,
17              remember, and carry out simple routine tasks; he can have
              occasional and superficial contact with coworkers but no contact
18              with the general public; and he is limited to occasional
              predictable changes in the workplace setting.

19

20    AR 19.

21

In determining Dale's RFC, the ALJ found that Dale's statements concerning the intensity, persistence and limiting effects of his alleged symptoms "are not entirely consistent with the medical evidence and other evidence in the record."  AR 20.

**Step four:**  The ALJ found that Dale is unable to perform his past relevant work as a diesel mechanic, industrial truck operator, and construction worker II because the work exceeds his RFC.  However, there are jobs that exist in the national economy that Dale can perform considering his age, education, work experience, and RFC.

**Step five:** Dale has not been disabled within the meaning of the Social Security Act at any time since he filed his application on January 8, 2016.  AR 17–25.

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on March 25, 2019.  AR 1–3.

## APPLICABLE LEGAL STANDARDS

### A. Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)).  "The [Commissioner's] determination that a claimant is not

ORDER DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

1    disabled will be upheld if the findings of fact are supported by substantial evidence."

2    *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).

3    Substantial evidence is more than a mere scintilla, but less than a preponderance.

4    *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v.*

5    *Sullivan*, 888 F.2d 599, 601–02 (9th Cir. 1989).  Substantial evidence "means such

6    evidence as a reasonable mind might accept as adequate to support a conclusion."

7    *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch

8    inferences and conclusions as the [Commissioner] may reasonably draw from the

9    evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir.

10    1965).  On review, the court considers the record as a whole, not just the evidence

11    supporting the decisions of the Commissioner.  *Weetman v. Sullivan*, 877 F.2d 20,

12    22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

13        It is the role of the trier of fact, not the reviewing court, to resolve conflicts in

14    evidence.  *Richardson*, 402 U.S. at 400.  If evidence supports more than one rational

15    interpretation, the court may not substitute its judgment for that of the

16    Commissioner.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Allen v.*

17    *Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by

18    substantial evidence will still be set aside if the proper legal standards were not

19    applied in weighing the evidence and making a decision.  *Brawner v. Sec'y of Health*

20    *and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988).  Thus, if there is substantial

21    evidence to support the administrative findings, or if there is conflicting evidence

ORDER DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 9

that will support a finding of either disability or nondisability, the finding of the

Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir.

1987).

### B. Definition of Disability

The Social Security Act defines "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."  42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a claimant shall

be determined to be under a disability only if his impairments are of such severity

that the claimant is not only unable to do his previous work, but cannot, considering

the claimant's age, education, and work experiences, engage in any other substantial

gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A),

1382c(a)(3)(B).  Thus, the definition of disability consists of both medical and

vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

### C. Sequential Evaluation Process

The Commissioner has established a five-step sequential evaluation process

for determining whether a claimant is disabled.  20 C.F.R. § 416.920.  Step one

determines if he is engaged in substantial gainful activities.  If the claimant is

engaged in substantial gainful activities, benefits are denied.  20 C.F.R. §§

404.1520(a)(4)(i), 416.920(a)(4)(i).

ORDER DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 10

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude any gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work that he has performed in the past.  If the plaintiff is able to perform his previous work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in light of his residual functional capacity and age, education, and past

ORDER DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v.*

*Yuckert*, 482 U.S. 137, 142 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie

case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th

Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden

is met once the claimant establishes that a physical or mental impairment prevents

him from engaging in his previous occupation.  *Meanel*, 172 F.3d at 1113.  The

burden then shifts, at step five, to the Commissioner to show that (1) the claimant

can perform other substantial gainful activity, and (2) a "significant number of jobs

exist in the national economy" which the claimant can perform.  *Kail v. Heckler*, 722

F.2d 1496, 1498 (9th Cir. 1984).

## ISSUES ON APPEAL

The parties' motions raise the following issues regarding the ALJ's decision:

1. Did the ALJ erroneously reject Plaintiff's severe spinal impairment?;

2. Did the ALJ erroneously reject Plaintiff's subjective symptom testimony?; and

3. Did the ALJ improperly reject the opinions of Plaintiff's medical providers?

### *Non-Severe Impairment Finding*

Plaintiff argues that the ALJ's finding that Plaintiff is not severely impaired

by his degenerative disc disease is inconsistent with the medical opinions and the

objective medical evidence in the record.  ECF No. 10 at 4.  Plaintiff emphasizes

ORDER DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 12

that the state agency reviewing consultant, James Irwin, MD, opined that this condition was severe, and it limited Plaintiff to a light exertional capacity, with additional postural and environmental restrictions. *Id.* (citing AR 95−97). Plaintiff also cites to the opinion of treating provider, Tatiana Antoci, MD, who opined that Plaintiff's back pain and his anxiety and depression would limit Plaintiff to light duty part-time work, require him to lie down during the day, and miss work. *See id.* (citing AR 371−72, 376−77, 383−86).

The Commissioner responds that substantial evidence supported the ALJ's conclusion that Plaintiff's back problems caused no more than a minimal impact on his ability to perform basic work activities. ECF No. 11 at 2−3.

At the step two inquiry, an ALJ may find an impairment or combination of impairments to be non-severe only if the evidence shows only a "slight abnormality" that has no more than a minimal effect on an individual's ability to work. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see also* 20 C.F.R. §§ 416.920(c), 416.921(a).

In determining that Plaintiff's degenerative disc disease is a non-severe impairment, Judge Sloan reasoned:

> The record indicates diagnoses of mild degenerative disc disease, hypertension, dyslipidemia, seasonal allergies, allergic rhinitis, and history of knee surgeries. However, I find that these conditions cause no more than minimal impact on basic work activities. For instance:
> - August 2016 images of the lumbar spine showed mild degenerative changes but no acute findings.

ORDER DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

1

2

3

4

5

6

7

8

9

10

- The claimant had normal exams during ER presentations that same month.  He had normal range of motion, normal spinal alignment, normal gait, negative straight leg raise, and 5/5 strength in all extremities.
- On exam in June 2017, the claimant had normal steady gait, intact sensation, and deep tendon reflexes 2+ (normal) in the right and left patellar.  July 2017 images of the lumbar spine showed no compression fractures or spondylolisthesis.
- Physical exams throughout the record consistently show normal lumbar spine, normal gait and station, normal muscle tone and coordination, normal sensation, normal reflexes, and no focal deficits.
- Hypertension is indicated as stable; knee pain is described as minimal; diet and exercise has [sic] been advised for dyslipidemia; allergic rhinitis/seasonal allergies is stable with medication.

AR 17−18 (internal citations to record omitted).

11

12

13

14

15

16

17

18

19

20

21

The Court finds substantial evidence in the record to support the ALJ's conclusion that Plaintiff's degenerative disc disease causes no more than a minimal impact on his ability to perform basic work activities.  The ALJ cited to an examination in which Plaintiff had normal range of motion, normal spinal alignment, normal gait and station, normal muscle tone, normal coordination, intact sensation and mostly normal reflexes, negative straight leg raise, and full strength in his arms and legs. AR 18 (citing AR 651-52, 658, 662, 681).  Other evidence in the record also supports that Plaintiff has normal range of motion, gait and station, and muscle strength and tone.  *See* AR 505, 513, 521, and 528−29.  The evidence cited by the ALJ is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  Therefore, the ALJ

ORDER DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

1    reasonably concluded that this condition was not affecting Plaintiff's ability to walk,

2    stand, sit, lift, or engage in any other basic work activity.

3         Plaintiff also argues that evidence in the record supports that Plaintiff sought

4    care at the emergency room for back pain because he had difficulty getting

5    appointments with his primary care doctor.  The ALJ found that the "the claimant

6    represented that his attorney advised him to present to ER whenever he has back

7    pain."  *See* ECF No. 12 at 3; AR 691.  The record supports the ALJ's finding while

8    also supporting that Plaintiff's primary care provider "was difficult to get an

9    appointment with."  AR 691.

10        Whether Plaintiff's primary reason for presenting to the ER rather than a

11   primary care office when he experienced back pain was because of difficulty

12   securing appointments or because of advice Plaintiff recalled from his then-attorney

13   is immaterial to Plaintiff's appeal.  Either way, the ALJ's decision acknowledged

14   that Plaintiff had sought medical care when he experienced back pain.  *See* AR 22.

15   However, as discussed above, substantial evidence supported the ALJ's conclusion

16   that Plaintiff had not shown that his spinal impairment was so severe that it affected

17   his ability to engage in basic work activity.  Therefore, the Court finds that the ALJ

18   did not err in finding that Plaintiff's degenerative disc disease is a non-severe

19   impairment.

20   / / /

21   / / /

ORDER DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 15

1      ***Treatment of Plaintiff's Symptom Testimony***

2              Plaintiff argues that the ALJ erroneously discounted Plaintiff's subjective

3      symptom testimony by reasoning that his medical record showed an improvement of

4      his symptoms over time and by finding that Plaintiff "has remained focused" on

5      obtaining Social Security benefits.  ECF No. 10 at 8–9; *see also* AR 22.  Plaintiff

6      argues that the evidence "does not support the ALJ's implication that [Plaintiff's]

7      pursuit of benefits was improperly motivated by secondary gain."  *Id.* at 9.  Plaintiff

8      also argues that the ALJ could not rely wholly on inconsistencies between Plaintiff's

9      claimed persistence and severity of his symptoms and the objective medical

10     evidence to discount Plaintiff's subjective complaints.  *See id.*  Rather, if the ALJ

11     determines that the symptom testimony is inconsistent with the medical record, the

12     ALJ then must look to other evidence in the record to determine whether it

13     substantiates Plaintiff's allegations regarding intensity and persistence of symptoms.

14     *Id*. at 10 (citing Social Security Ruling "SSR" 16-3p; *Light v. Soc. Sec. Admin.,* 119

15     F.3d 789, 792 (9th Cir. 1997)).

16             The Commissioner responds that an ALJ may rely on objective medical

17     evidence "as an indicator to assist in reaching reasonable conclusions about the

18     intensity and persistence of a claimant's symptoms."  ECF No. 11 at 4–5 (citing 20

19     C.F.R. § 416.929(c)(2)-(c)(4); SSR 16-3p).  The Commissioner offers as an example

20     that Plaintiff alleged disabling issues related to anger, yet "a treatment provider

21     noted that [Plaintiff] had developed methods to cope with his anger. *Id.* at 5 (citing

ORDER DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 16

1    AR 45−46, 55, 338).  The Commissioner continues, "On mental examination,

2    [Plaintiff] did not exhibit significant social limitations—he had a full range of affect

3    and was calm and cooperative."  *Id.* (citing AR 291, 297, 359, 626).

4         In general, "questions of credibility and resolution of conflicts in the

5    testimony are functions solely" for the ALJ.  *Parra v. Astrue*, 481 F.3d 742, 750 (9th

6    Cir. 2007) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (internal

7    quotations omitted)).  In determining whether to accept a claimant's subjective

8    symptom testimony, an ALJ must undertake a two-step analysis.  20 C.F.R. §§

9    404.1529, 416.929; *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th

10   Cir. 2007); *Smolen*, 80 F.3d at 1281.

11        Under the first step, the ALJ must find that the claimant has produced

12   objective medical evidence of an underlying "impairment," and that the impairment,

13   or combination of impairments, could reasonably be expected to cause "some degree

14   of the symptom."  *Lingenfelter*, 504 F.3d at 1036.  Where an ALJ finds no evidence

15   of malingering, the ALJ may "'reject the claimant's testimony about the severity of

16   [his] symptoms only by offering specific, clear and convincing reasons for doing

17   so.'"  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492–92 (9th Cir. 2015) (*quoting*

18   *Lingenfelter*, 504 F.3d at 1036).

19        An SSR in effect at the time of the ALJ's decision in this matter provides that

20   the ALJ "will not assess an individual's overall character for truthfulness in the

21   manner typically used during an adversarial court litigation."  *See* SSR 16-3p, 2016

ORDER DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 17

1    SSR LEXIS 4 ("SSR 16-3p") at *1, 27.  "The focus of the evaluation of an

2    individual's symptoms should not be to determine whether he or she is a truthful

3    person" but instead "whether the evidence establishes a medically determinable

4    impairment that could reasonably be expected to produce the individual's symptoms

5    and given the adjudicator's evaluation of the individual's symptoms, whether the

6    intensity and persistence of the symptoms limit the individual's ability to perform

7    work-related activities[.]"  SSR 16-3p at *28.

8            The Ninth Circuit noted that SSR 16-3p "makes clear what our precedent

9    already required: that assessments of an individual's testimony by an ALJ are

10   designed to 'evaluate the intensity and persistence of symptoms after [the ALJ]

11   find[s] that the individual has a medically determinable impairment(s) that could

12   reasonably be expected to produce those symptoms,' and not to delve into wide-

13   ranging scrutiny of the claimant's character and apparent truthfulness."  *Trevizo v.*

14   *Berryhill*, 871 F.3d 664, 678 n. 5 (9th Cir. 2017) (quoting SSR 16-3p) (brackets in

15   original).

16           Plaintiff faults the ALJ for discounting Plaintiff's subjective symptom

17   testimony without identifying any evidence of malingering.  ECF No. 10 at 7.

18   Plaintiff also disputes whether the ALJ considered evidence in the record other than

19   objective medical evidence in rejecting Plaintiff's allegations regarding the disabling

20   nature of his mental health symptoms.  However, Judge Sloan's recitation of

21

ORDER DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 18

Plaintiff's account of the intensity of his mental health symptoms thoroughly and accurately summarizes Plaintiff's hearing testimony:

> At hearing, the claimant testified that he has worked off and on since his release from prison in 2007. He worked last as a diesel mechanic in 2015. He also had other jobs including warehouse work and stocking and flooring work for one day. He tried to look for work. It was hard with his disability case going and all appointments. He had problems findings a job because of too many hours away from work.
>
> He has anger issues. He has difficulty concentrating because of all the medications he takes. After incarceration for so long, he is uncomfortable around large crowds. He feels uncomfortable around eight or more people. He either walks away or confronts someone if too close. He snaps easily and it causes fights. He has not been arrested for assault. He was first prescribed mental health medication while in prison. He was constantly getting into fights while in prison.
>
> He feels like his anger issue is not as bad as it was when he was in prison because of medication and attending mental health treatment. He has not had any problems with violence. He becomes angry at times "verbal" but nothing harmful. He has learned through his classes and with medication how to control his anger. He believes his mental health has worsened since his completion and discharge from treatment. He no longer has a counselor.
>
> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

AR 20.

In addition, in line with SSR 16-3, Judge Sloan offered clear, specific, and convincing reasons, in the context of the full record, for not fully accepting

ORDER DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

Plaintiff's statements concerning the intensity, persistence and limiting effects of his claimed symptoms and their effect on his ability to work.  AR 20–23.  The ALJ cited to numerous treatment records that were inconsistent with Plaintiff's self-described intensity of his anger issues and depression and anxiety symptoms.  AR 20–23; *see* SSR 16-3p.

Moreover, the ALJ's reasoning regarding Plaintiff's focus on obtaining Social Security benefits is in line with the second-step inquiry under 20 C.F.R. §§ 404.1529, 416.929.  Specifically, Plaintiff's testimony that he was unable to work in part because of the time he was devoting to the Social Security application process is other evidence that the symptoms themselves were not the only reason for not working.  *See* AR 22, 45, 47, and 51.  Accordingly, in formulating the RFC, the ALJ reasonably accepted Plaintiff's statements to the extent that they were consistent with the objective medical and other evidence by incorporating several nonexertional limitations.  *See* AR 19.  The Court does not find error on this basis.

### *Treatment of Medical Opinion Evidence*

Plaintiff contends that the ALJ improperly rejected the opinions of Plaintiff's treatment provider Dr. Antoci, state agency consultant Dr. Irwin, and independent examiner R.A. Cline, Psy.D.  ECF No. 10 at 11–21.  The Commissioner argues that the ALJ's treatment of this medical evidence does not amount to harmful error.  ECF No. 11 at 8.

ORDER DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

1       With respect to medical opinions, an ALJ must accord more weight to a

2   treating physician's opinion than an examining physician's, and an examining

3   physician's opinion carries more weight than a non-examining, reviewing, or

4   consulting physician's opinion. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir.

5   2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  An ALJ must articulate

6   "specific and legitimate" reasons, supported by substantial evidence in the record, to

7   reject the opinion of either a treating or an examining doctor.  *Lester*, 81 F.3d at

8   830–31.

9       Dr. Antoci

10      The ALJ gave little weight to Dr. Antoci's August 2016 and July 2017

11  opinions that Plaintiff would likely miss four or more days per month due to

12  depression.  AR 22; *see also* AR 370–71, 376–77.  The ALJ reasoned:

13      There is no evidence in the record to support this level of absences per
        month due to depression.  As noted, mental health issues are stable on
14      medications.  Corresponding mental status exams in 2016 indicate
        progressive improvement in symptoms.  In fact, the claimant has
15      admitted that he no longer has depression or anxiety.  He completed
        treatment in February 2017.  Dr. Antoci's most recent medical source
16      statement is dated July 2017, well after he stopped treatment had [sic]
        his provider deemed him stable.  Furthermore, the claimant testified
17      that Dr. Antoci asked him questions in order to fill out the forms, which
        calls to question the reliability of her opinions.
18
    AR 23 (internal citations to record omitted).
19
        Plaintiff argues that the ALJ's treatment of Dr. Antoci's opinion is
20
    unsupported by the record is "irrational and untrue."  ECF No. 12 at 7.  Plaintiff also
21

1    claims error based on the ALJ's reasoning that Dr. Antoci's opinion should not be

2    accorded greater weight because she relied on Plaintiff's responses in forming it.  *Id.*

3    The Commissioner counters that Plaintiff cannot merely disagree with the ALJ's

4    interpretation of the record by arguing that his pain and depression would result in

5    absenteeism.  ECF No. 11 at 9.  Moreover, the Commissioner asserts that the ALJ

6    "may disregard a doctor's opinion based largely on the subjective complaints of a

7    claimant who lacks credibility."  *Id.* at 10 (citing *Tonapetyan v. Halter*, 242 F.3d

8    1144, 1149 (9th Cir. 2001)).

9        The Court agrees with the Commissioner.  Plaintiff does not cite the Court to

10   evidence supporting the level of absenteeism that Dr. Antoci asserted Plaintiff would

11   incur in a work setting, and the ALJ provides specific and legitimate reasons, in the

12   form of lack of support for the absenteeism opinion and Dr. Antoci's reliance on

13   Plaintiff's self-reports, for discounting the opinion .  *See* AR 22–23; *Lester*, 81 F.3d

14   at 830–31.

15            Dr. Irwin

16       The ALJ gave little weight to state agency medical consultant Dr. Irwin's June

17   2016 opinion that Plaintiff is limited to light work.  AR 23; *see also* AR 95–99.  The

18   ALJ reasoned:

19       As discussed, objective images of the claimant's spine are generally
20       mild.  Physical exams consistently show normal gait, full strength,
         normal range of motion, and intact sensation.  These factors are
21       inconsistent with a limitation to light work.

1   AR 23.

2          The Court already found that the ALJ's determination that Plaintiff's

3   degenerative disc disease is non-severe is supported by substantial evidence in the

4   record.  Based on the same substantial evidence, the ALJ gave specific and

5   legitimate reasons for giving little weight to Dr. Erwin's opinion, and, therefore, did

6   not err in her treatment of this medical evidence.

7          Dr. Cline

8          The ALJ gave little weight to independent examiner Dr. Cline's February

9   2016 assessment that Plaintiff is moderately limited in several areas including his

10  ability to communicate, perform effectively in the workplace, and maintain

11  appropriate behavior in a work setting.  AR 22; *see also* AR 381.  The ALJ

12  reasoned:

13         Dr. Cline's form states that the evaluation is based only on a February
           2014 evaluation of Dr. Kenderdine and the claimant's self-report.  She
14         checked boxes with no explanation.  In addition, she assessed a 6 to 9
           month limitation, which is inconsistent with disability.

15
    AR 22.
16
           The ALJ's consideration of Dr. Cline's opinions does not support a finding of
17
    error.
18
           Having found no error in the ALJ's decision, the Court grants the
19
    Commissioner's motion for summary judgment and denies Plaintiff's motion.
20

21

    ORDER DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANT'S
    MOTION FOR SUMMARY JUDGMENT ~ 23

1    Based on that conclusion, the Court does not address Plaintiff's argument for

2    remand for an immediate award of benefits.  *See* ECF No. 10 at 21.

3        Accordingly, **IT IS HEREBY ORDERED**:

4        1.  Plaintiff's Motion for Summary Judgment, **ECF No. 10**, is **DENIED**.

5        2.  The Commissioner's Motion for Summary Judgment, **ECF No. 11**, is

6            **GRANTED**.

7        3.  Judgment shall be entered in favor of Defendant.

8        **IT IS SO ORDERED**.  The District Court Clerk is directed to enter this

9    Order and provide copies to counsel.

10       **DATED** May 18, 2020.

11

12                        ___*s/ Rosanna Malouf Peterson*___
                              ROSANNA MALOUF PETERSON
                                United States District Judge

13

14

15

16

17

18

19

20

21

ORDER DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 24